*Most Visible* (14)



BOOK 474 — 142

# MINERAL CONVEYANCE AND UNDERGROUND GAS STORAGE LEASE AGREEMENT

THIS MINERAL CONVEYANCE AND UNDERGROUND GAS STORAGE LEASE AGREEMENT, made and entered into this _23rd_ day of _April_, 1987, by and between _ROBERT J. HILL AND JOANN HILL, HIS WIFE_

_____

_____

_____,

hereinafter referred to collectively and in the singular as "Grantor" and TEXAS GAS TRANSMISSION CORPORATION, a Delaware corporation, having an office in Owensboro, Kentucky, hereinafter called "Grantee";

WITNESSETH:

WHEREAS, Grantor is the owner of the land described in Exhibit "A", attached hereto and made a part hereof, which land is located in an area known as the Barnsley Gas Field, Hopkins County, Kentucky, and from which gas has been produced and marketed from the Bethel Formation; and

WHEREAS, the Grantee is the owner of an interstate gas pipeline system and in connection with its operation of said pipeline system it desires to store natural gas underground in the Bethel Formation and in other formations and horizons between the top of the Lower Paint Creek Limestone Formation and the base of the Lower Renault Limestone Formation underlying the lands described in Exhibit "A";

NOW, THEREFORE:

Section 1 - MINERAL CONVEYANCE

1.1    Grantor, for and in consideration of the sum of _____ _TEN_ _____ 00/100 Dollars ( _10.00_ ), cash in hand paid, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, has granted, bargained, sold and conveyed and by these presents does grant, bargain, sell and convey unto Grantee, its successors and assigns, an undivided _____ _Full_ _____ interest in all the oil, gas and other minerals, in, or that are a part of, or that may be produced from the Bethel Formation and other formations and horizons between the top of the Lower Paint Creek Limestone Formation and the base of the Lower Renault Limestone Formation underlying the surface of the land described in Exhibit "A" attached hereto and made a part hereof as if repeated herein at length, reserving unto Grantor, its successors and assigns, a royalty interest of one-eighth (1/8) part of all oil which may be produced and saved by Grantee from the Bethel Formation underlying the lands described in the attached Exhibit "A", delivery of such oil to be made to the Grantor at the wells or to the credit of Grantor in the pipeline to which any wells may be connected.

In respect to the royalty interest reserved by the Grantor, it is expressly understood that the Grantee shall not be required or under any covenant or obligation, either express or implied, to drill or operate said Bethel Formation for the production of oil and that all drilling operations and development for oil in said Bethel Formation, before and after discovery, shall be solely at the Grantee's option and election.

If Grantor owns a less interest in the land covered by this conveyance than the entire undivided fee simple mineral estate therein, then whether or not such less interest is referred to or described herein the royalty reserved herein shall be considered as being reserved only in the proportion which Grantor's mineral interest

_Ronnie m_ (1)

_Amendments_
486-188

(15)

bears to the whole and undivided mineral fee.   148

TO HAVE AND TO HOLD the property, rights, interest and privileges described in this Section 1, together with, all and singular, the rights and appurtenances thereunto in anywise belong unto the said Grantee, its successors and assigns with covenant of GENERAL WARRANTY.

Section 11 - UNDERGROUND GAS STORAGE LEASE AGREEMENT

2.1   Grantor, for and in consideration of the sum of _____ TEN AND ——————— 00/100 Dollars ($ 10.00 ), cash in hand paid and other good and valuable considerations, the receipt and sufficiency of which is hereby acknowledged, hereby grants, demises, leases and lets exclusively, unto the Grantee the exclusive right, privilege, and easement for a term of one (1) year from the date hereof and as long thereafter as the annual rentals provided for by paragraph 2.2 hereof are paid as hereinafter provided for, to inject and store gas in, and withdraw and remove gas from the Bethel Formation and other formations and horizons between the top of the Lower Paint Creek Limestone Formation and the base of the Lower Renault attached hereto, (which formations underlying the surface of said land are hereinafter called "Storage Reservoir") together with all rights incident to said injection and storage and withdrawal and removal, including without limitation, the following:

(a)   The right to store gas in the Storage Reservoir and retain possession, ownership and title of gas so stored as personal property;

(b)   The right to drill, install, construct, maintain, renew, repair, replace and remove, from time to time, such wells, pipelines, gas transmission lines, casing, drips, valves, structures and other related equipment, appliances and appurtenances as Grantee may deem desirable, utilizing the surface of the lands described in Exhibit "A" to the extent necessary to accomplish such purposes, notwithstanding any of the above, Grantee shall secure in writing Grantor's approval for any well locations prior to drilling any additional wells or constructing any additional above-ground facilities.

(c)   The right to have ingress and egress to, from and across the land described in Exhibit "A", and the Storage Reservoir, and to enter upon and across the surface of the land described in Exhibit "A" at any time by means of existing roads, together with the right to construct and maintain roads for the purpose of ingress and egress for Grantee's operation of the Storage Reservoir. The location of any new roads constructed pursuant to this paragraph shall be subject to Grantors approval.

(d)   The right to remove from the land described in Exhibit "A" all property placed in and on the same by Grantee, including well casings; and to do and perform such other acts and things as may be necessary, usual or convenient for any and all of the foregoing purposes or as a part of and in connection with the storage of gas in the Storage Reservoir underlying the lands described in Exhibit "A" alone or conjointly with other lands in the vicinity thereof.

2.2   The Grantee shall pay to Grantor the sum of _____ SIXTY AND ——————— 00/100 Dollars ($ 60.00 ), per year, payable annually, commencing one (1) year from the date hereof, as rental for the rights granted to the Grantee by Section 11 hereof. The Grantee may release and surrender the rights granted by Section 11 hereof at any time by written instrument duly recorded in the Office of the Hopkins County Court Cler; and in the event of such release and surrender, the Grantee shall have the right to remove

 

(16)

149

its equipment from the land described in Exhibit "A" either before or within ninety (90) days after such release and surrender is made as herein provided.

2.3   The Grantee shall pay the Grantor the sum of _____ *Three Hundred and —00/100* Dollars ($ *300 00* ) per year for the first well and _____ *Fifty and 00/100* _____ Dollars ($ *50 00* ) per year for each additional well that may be drilled or maintained by the Grantee on the lands described in Exhibit "A" in connection with the storage of gas.

2.4   The Grantee shall pay the Grantor for all pipelines and gas transmission lines constructed hereafter on the land described in Exhibit "A", for the purpose of introducing gas into, storing gas in, or removing gas from the Storage Reservoir beneath the lands described in Exhibit "A", at the rate of One Dollar ($1.00) per rod.

2.5   The Grantee shall pay the Grantor for damage caused by its operations to growing crops, fences and timber on the lands described in Exhibit A".

2.6   (a)   All payments provided for by this Section 11 may be made by currency, draft, or check mailed direct to the Grantor at _____ *Route 5, Box 176, Madisonville, Ky. 42431* _____, or to the _____ Bank at _____, for the deposit to the credit of the Grantor, which bank or its successors is hereby designated the Grantor's agent and shall continue as a depository for all rentals and payments hereunder regardless of any change of ownership in the land described in Exhibit "A". In the event said depository bank should fail or refuse to accept tenders made hereunder, or if it should close without a successor, or if the Grantee shall be in doubt as to the payees entitled to receive such payments, Grantee may withhold payments with the same effect as if tendered, until the Grantee has received written instructions, executed and accepted by all persons appearing to the Grantee to be interested, naming a new depository or specifying the payees and their respective interests. In the event Grantee should be in doubt as to the payees entitled to the payments hereinabove mentioned, Grantee shall give Grantor written notice specifying the reason for such doubt. The notice shall be mailed to the Grantor at Grantor's last known address, and shall inform Grantor of the other parties appearing to the Grantee to be interested, and the Grantor shall then furnish the Grantee proof of the real parties in interest.

Notwithstanding the provisions of paragraph 2.6 (b) and 2.7, Grantee shall have the right to withhold payments provided for by this Section 11 until the Grantor furnishes the Grantee with proof, satisfactory to the Grantee, of the real parties in interest.

(b)   Failure of the Grantee to make annual payments provided for by paragraphs 2.2 and 2.3 hereof shall not invalidate the rights granted by this Section 11 unless and until Grantee fails to make such payments within thirty (30) days after having received a written request from the Grantor. In such requests, Grantor shall set forth a description of the real estate involved, the due date of the rental, the amount thereof, and the date of this instrument. Nothing in this paragraph 2.6 nor in this instrument shall require the Grantee to use or to continue to use the Storage Reservoir described herein.

2.7   If at any time there be as many as four (4) parties entitled to rentals or other payments, Grantee may withhold payments thereof unless and until all parties designate, in writing, in a recordable instrument to be filed with the

-3-

*Ronie Morgan* (1)

Grantee, a common agent to receive all payments due hereunder and to execute division and transfer orders on behalf of said parties and their respective successors in title.

2.8  If the Grantor owns a less interest in the land described in Exhibit "A" than the entire and undivided fee simple surface estate therein, then the rentals and other payments or deliveries provided in Section 11 hereof shall be paid or delivered to the Grantor only in the proportion which the Grantor's interest in the surface bears to the whole and undivided surface fee.

2.9  The Grantor shall have the right to use gas, free of cost, for domestic appliances inside one dwelling house located on the land covered by this agreement, subject to and with the following specific understanding as regards said use:

(a)  The Grantor shall construct and maintain its own service line and regulator or regulators in such a manner as to prevent leakage of gas and shall use only appliances, regulators, and other equipment including pipe, designed and approved for the use of natural gas.

(b)  The tap or connection may be made to the field pipelines of the Grantee located on the land described in Exhibit "A" at a point to be approved by the Grantee; however, if none of the Grantee's field pipelines are located on said land, Grantor may have a connection on other field pipelines of the Grantee as provided above, provided, however, that the Grantor shall acquire and maintain his own easement and permit and show satisfactory proof of such right to the Grantee.

(c)  No connection shall be made to the Grantee's transmission pipelines.

(d)  The Grantee shall not be liable for any shortage or failure in the supply of gas for the Grantor's use. If the Grantee shall hereafter discontinue for any reason the use of the said Storage Reservoir or remove any of its field pipelines and equipment from said field to which Grantor has a service line connected, the Grantor's right to use gas as aforesaid shall terminate. Further, if the Grantee shall abandon, remove, or discontinue the use of any pipeline to which the Grantor may have a connection, the Grantee shall not be held responsible for the making of a new connection. The Grantor hereby specifically consents that the Grantee may at any time remove its pipeline or pipelines, and immediately thereupon the right to use gas, as set out in this paragraph 2.9, shall terminate, provided however, that should gas be available from another field pipeline located within the confines of the storage field, the Grantor shall have the right of connection as agreed above.

(e)  The Grantee shall not be liable in any way for damages or loss which may occur as a result of acts of the Grantor, which are caused by equipment or appliances of the Grantor, it being understood the Grantor's use of said gas shall be at its sole risk and expense.

2.10  Grantee shall bury its pipelines below plow depth.

2.11  No well shall be drilled nearer than two hundred feet (200') to any dwelling house or barn on the land described in Exhibit "A", without the written consent of the owner thereof.

2.12  The Grantor reserves the right to drill hereafter a well or wells through the Storage Reservoir; however, in connection with any such drilling the Grantor, his heirs, assigns, or lessees, shall notify the Grantee before the commencement of any such well, and all reasonable precautions, and ordinary care, shall be exercised, including the use of rotary drilling methods and the use of heavy mud, to protect the said Storage Reservoir from blowout or loss of gas during the drilling






of any such wells; and upon completion of such drilling, such well or wells shall be properly sealed, whether producing or not, by cementing to prevent loss of gas or reservoir fluids from or the encroachment of water into the Storage Reservoir, and the Storage Reservoir shall not be damaged during such drilling, or thereafter during any completion, production, or well stimulation operations, and the Grantor shall permit Grantee or its duly authorized employees or agents, but at its sole risk and expense, to have access to the derrick floor of all wells which penetrate said Storage Reservoir for the purpose of observing and inspecting drilling operations insofar as they relate to the safety of Grantee's operations concerning its rights in and to said Storage Reservoir.

2.13   To use, free of cost, water produced on the land described in Exhibit "A" for Grantee's operations of its Storage Reservoir, except water from ponds of Grantor or wells drilled by Grantor.

2.14   The Grantor hereby warrants and agrees to defend the title to the land described in Exhibit "A" and agrees that the Grantee shall have the right at any time to redeem for the Grantor, by payment, any mortgage, taxes, or other liens on said land, in the event of default of payment by the Grantor, and shall be subrogated to the rights of the holder thereof; and Grantor agrees that any such payments made by the Grantee for the Grantor shall be deducted from any amounts of money which may become due the Grantor under the terms of this agreement.

2.15   This agreement shall extend to and be binding upon the heirs, assigns, executors, administrators, and successors of both parties hereto, and either party may assign, transfer, and convey, either in whole or in part, its ownership or interest in the land, rights, privileges, and property covered by this agreement; but no change in ownership of the land described in Exhibit "A" shall be binding upon the Grantee until the instrument conveying title thereto shall have been properly recorded in the County Court Clerk's Office and a certified copy thereof shall have been furnished to the Grantee.

2.16   Any notices or requests herein requested or permitted shall be deemed sufficient as to delivery if given in writing, deposited in the United States mails, registered, return receipt requested, addressed to the other party hereto as follows:

Grantor:   *RT. 5, Box 176, Madisonville, Ky 42431*

Grantee:   Texas Gas Transmission Corporation, P. O. Box 1160
           Owensboro, Kentucky 42301

2.17   All covenants whether expressed or implied by this agreement shall be subject to all federal and state laws and to all executive orders, rules or regulations of state and federal authorities. The rights created by this agreement shall not be terminated in whole or in part, nor Grantee held liable for any failure to perform hereunder, if such failure is due to or is a result of any such law, order, rule or regulation.

IN TESTIMONY WHEREOF, witness the signature of the Grantor, this the date first hereinabove written.

This instrument was prepared by
*Jerry Blanford*
3800 Frederica Street
Owensboro, Kentucky

*Robert J. Hill*
*Jo Ann Hill*

-5-

*Ronie Man (11)*

(19

152

STATE OF _Kentucky_
COUNTY OF _Hopkins_

I, _Gerald W Blandford_, a Notary Public in and for the state and county aforesaid, do hereby certify that this day there appeared before me, _Robert J. Hill and JoAnn Hill_

who produced the foregoing instrument and duly signed and acknowledged the same to be _their_ act for the uses and purposes therein set forth.

WITNESS my hand and official seal, this _23rd_ day of _April_, 19_87_.

_Gerald W Blandford_
Notary Public

My Commission expires: _Aug. 1, 1988_.

STATE OF _____
COUNTY OF _____

I, _____, a Notary Public in and for the state and county aforesaid, do hereby certify that this day there appeared before me, _____

who produced the foregoing instrument and duly signed and acknowledged the same to be _____ act for the uses and purposes therein set forth.

WITNESS my hand and official seal, this _____ day of _____, 19_____.

_____
Notary Public

My Commission expires: _____.

-6-

R. Hill

(20)

/53

EXHIBIT "A"

to

Mineral Conveyance and Storage Lease Agreement between

Robert J. Hill and Jo Ann Hill

"Grantor," and Texas Gas Transmission Corporation, "Grantee," dated

April 23, 1987.

Land Description

All that tract or parcel of land located and situated in Hopkins County, Kentucky, and described as follows, to wit:

Beginning at a fence corner (iron pin) located on the NE corner of William Hill property, south side of County Road, running thence N 87° 20' W parallel to and with right of way of County Road 221.50 feet to an iron pin, thence S 20° 39' W, 200 feet to an iron pin, thence S 25° 05' E, 945 feet to an iron pin, thence S 36° 05' W, 1445 feet to L & N R.R. right of way and iron pin, thence parallel with L & N R.R. right of way in a SE direction 910 feet to the NW corner of Robert J. Hill and his wife Jo Ann Wyatt Hill property, thence N 73° 12' E, 412 feet to a permanent corner post being the NE corner of Claude Almon property, thence S 17° 30' E, 412 feet to County Road (Brackett Lane), thence with right of way and parallel to County Road (Brackett Lane) NE 990 feet to a permanent corner post, thence N 19° 09' W, 265.29 feet to an iron pin, thence N 26° 35' W, 1624.20 feet to an iron pin; thence N 27° 40' W, 358 feet to an iron pin, thence N 26° 54' W, 420 feet to an iron pin, thence N 22° 47' W, 491 feet to an iron pin on south side of County Road the beginning. This parcel of land contains approximately 59 acres, more or less. All mineral rights are included with this property unless heretofore conveyed.

This real property was devised and bequeathed to Betty H. Beeny and Robert J. Hill by their father, William Hill, in equal shares and each became the owner of a 1/2 undivided interest on the date of his death which was December 21, 1978. His will is of record in Will Book ___26___, at page ___265___, in the Office of the Hopkins County Court Clerk.

STATE OF KENTUCKY
COUNTY OF HOPKINS   Sct.

This instrument ... day of May, 88 12:40 P.M.
duly recorded Deed 424, 147

It is intended to include in the foregoing description all lands and interest therein contiguous to or appurtenant to the above-described lands owned or claimed by the Grantor, regardless of any omissions or irregularities in the foregoing description.

(2A)

BOOK _479_ PAGE _154_

## MINERAL CONVEYANCE AND UNDERGROUND GAS STORAGE LEASE AGREEMENT

THIS MINERAL CONVEYANCE AND UNDERGROUND GAS STORAGE LEASE AGREEMENT, made and entered into this _23rd_ day of _April_, 1987, by and between _Robert J. Hill and Jo Ann Hill, his wife_ _____,
hereinafter referred to collectively and in the singular as "Grantor" and TEXAS GAS TRANSMISSION CORPORATION, a Delaware corporation, having an office in Owensboro, Kentucky, hereinafter called "Grantee";

### WITNESSETH:

WHEREAS, Grantor is the owner of the land described in Exhibit "A", attached hereto and made a part hereof, which land is located in an area known as the Barnsley Gas Field, Hopkins County, Kentucky, and from which gas has been produced and marketed from the Bethel Formation; and

WHEREAS, the Grantee is the owner of an interstate gas pipeline system and in connection with its operation of said pipeline system it desires to store natural gas underground in the Bethel Formation and in other formations and horizons between the top of the Lower Paint Creek Limestone Formation and the base of the Lower Renault Limestone Formation underlying the lands described in Exhibit "A";

NOW, THEREFORE:

### Section 1 - MINERAL CONVEYANCE

1.1    Grantor, for and in consideration of the sum of _____ _Ten and_ _____ _00/100_ Dollars ( _10.00_ ), cash in hand paid, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, has granted, bargained, sold and conveyed and by these presents does grant, bargain, sell and convey unto Grantee, its successors and assigns, an undivided _____ _Full_ _____ interest in all the oil, gas and other minerals, in, or that are a part of, or that may be produced from the Bethel Formation and other formations and horizons between the top of the Lower Paint Creek Limestone Formation and the base of the Lower Renault Limestone Formation underlying the surface of the land described in Exhibit "A" attached hereto and made a part hereof as if repeated herein at length, reserving unto Grantor, its successors and assigns, a royalty interest of one-eighth (1/8) part of all oil which may be produced and saved by Grantee from the Bethel Formation underlying the lands described in the attached Exhibit "A", delivery of such oil to be made to the Grantor at the wells or to the credit of Grantor in the pipeline to which any wells may be connected.

In respect to the royalty interest reserved by the Grantor, it is expressly understood that the Grantee shall not be required or under any covenant or obligation, either express or implied, to drill or operate said Bethel Formation for the production of oil and that all drilling operations and development for oil in said Bethel Formation, before and after discovery, shall be solely at the Grantee's option and election.

If Grantor owns a less interest in the land covered by this conveyance than the entire undivided fee simple mineral estate therein, then whether or not such less interest is referred to or described herein the royalty reserved herein shall be considered as being reserved only in the proportion which Grantor's mineral interest



bears to the whole and undivided mineral fee.                                    155

    TO HAVE AND TO HOLD the property, rights, interest and privileges described in this Section 1, together with all and singular, the rights and appurtenances thereunto in anywise belong unto the said Grantee, its successors and assigns with covenant of GENERAL WARRANTY. *above ground not underground*

Section 11 ( UNDERGROUND GAS STORAGE LEASE AGREEMENT )

    2.1    Grantor, for and in consideration of the sum of _____ TEN AND ——————— 00/100 Dollars ($ 10.00 ), cash in hand paid and other good and valuable considerations, the receipt and sufficiency of which is hereby acknowledged, hereby grants, demises, leases and lets exclusively, unto the Grantee the exclusive right, privilege, and easement *for a term of one (1) year from the date hereof and as long thereafter as the annual rentals provided for by paragraph 2.2 hereof are paid as hereinafter provided for*, to inject and store gas in, and withdraw and remove gas from the Bethel Formation and other formations and horizons between the top of the Lower Paint Creek Limestone Formation and the base of the Lower Renault attached hereto, (which *formations underlying the surface of said land are hereinafter called "Storage Reservoir"*) together with all rights incident to said injection and storage and withdrawal and removal, including without limitation, the following:

    (a)    The right to store gas in the Storage Reservoir and retain possession, ownership and title of gas so stored as *personal property;*

    (b)    The right to drill, install, construct, maintain, renew, repair, replace and remove, from time to time, such wells, pipelines, gas transmission lines, casing, drips, valves, structures and other related equipment, appliances and appurtenances as Grantee may deem desirable, utilizing the surface of the lands described in Exhibit "A" *to the extent necessary to accomplish such purposes, notwithstanding any of the above, Grantee shall secure in writing Grantor's approval for any well locations prior to drilling any additional wells or constructing any additional above-ground facilities.*

    (c)    The right to have ingress and egress to, from and across the land described in Exhibit "A", *and the Storage Reservoir*, and to enter upon and across the surface of the land described in Exhibit "A" at any time by means of existing roads, together with the right to construct and maintain roads for the purpose of ingress and egress for Grantee's operation of the Storage Reservoir. The location of any new roads constructed pursuant to this paragraph shall be *subject to Grantors approval.*

    (d)    The right to remove from the land described in Exhibit "A" all property placed in and on the same by Grantee, including well casings; and to do and perform such other acts and things as may be necessary, usual or convenient for any and all of the foregoing purposes or as a part of and in connection with the storage of gas in the Storage Reservoir underlying the lands described in Exhibit "A" alone or conjointly with other lands in the vicinity thereof.

    2.2    The Grantee shall pay to Grantor the sum of _____ THREE AND ——————— 00/100 Dollars ($ 3.00 ), per year, payable annually, commencing one (1) year from the date hereof, as rental for the rights granted to the Grantee by Section 11 hereof. The Grantee may release and surrender the rights granted by Section 11 hereof at any time by written instrument duly recorded in the Office of the Hopkins County Court Cler; and in the event of such release and surrender, the Grantee shall have the right to remove

-2-

its equipment from the land described in Exhibit "A" either before or within ninety (90) days after such release and surrender is made as herein provided.

2.3     The Grantee shall pay the Grantor the sum of _____ THREE HUNDRED AND —⁰⁰/₁₀₀ Dollars ($ 300⁰⁰) per year for the first well and FIFTY AND ⁰⁰/₁₀₀ Dollars ($ 50⁰⁰) per year for each additional well that may be drilled or maintained by the Grantee on the lands described in Exhibit "A" in connection with the storage of gas.

2.4     The Grantee shall pay the Grantor for all pipelines and gas transmission lines constructed hereafter on the land described in Exhibit "A", for the purpose of introducing gas into, storing gas in, or removing gas from the Storage Reservoir beneath the lands described in Exhibit "A", at the rate of One Dollar ($1.00) per rod.

2.5     The Grantee shall pay the Grantor for damage caused by its operations to growing crops, fences and timber on the lands described in Exhibit A".

2.6     (a)     All payments provided for by this Section 11 may be made by currency, draft, or check mailed direct to the Grantor at _____ ROUTE 5, BOX 176, MADISONVILLE, KY 42431 , or to the _____ Bank at _____, for the deposit to the credit of the Grantor, which bank or its successors is hereby designated the Grantor's agent and shall continue as a depository for all rentals and payments hereunder regardless of any change of ownership in the land described in Exhibit "A". In the event said depository bank should fail or refuse to accept tenders made hereunder, or if it should close without a successor, or if the Grantee shall be in doubt as to the payees entitled to receive such payments, Grantee may withhold payments with the same effect as if tendered, until the Grantee has received written instructions, executed and accepted by all persons appearing to the Grantee to be interested, naming a new depository or specifying the payees and their respective interests. In the event Grantee should be in doubt as to the payees entitled to the payments hereinabove mentioned, Grantee shall give Grantor written notice specifying the reason for such doubt. The notice shall be mailed to the Grantor at Grantor's last known address, and shall inform Grantor of the other parties appearing to the Grantee to be interested, and the Grantor shall then furnish the Grantee proof of the real parties in interest.

Notwithstanding the provisions of paragraph 2.6 (b) and 2.7, Grantee shall have the right to withhold payments provided for by this Section 11 until the Grantor furnishes the Grantee with proof, satisfactory to the Grantee, of the real parties in interest.

(b)     Failure of the Grantee to make annual payments provided for by paragraphs 2.2 and 2.3 hereof shall not invalidate the rights granted by this Section 11 unless and until Grantee fails to make such payments within thirty (30) days after having received a written request from the Grantor. In such requests, Grantor shall set forth a description of the real estate involved, the due date of the rental, the amount thereof, and the date of this instrument. Nothing in this paragraph 2.6 nor in this instrument shall require the Grantee to use or to continue to use the Storage Reservoir described herein.

2.7     If at any time there be as many as four (4) parties entitled to rentals or other payments, Grantee may withhold payments thereof unless and until all parties designate, in writing, in a recordable instrument to be filed with the

 

Grantee, a common agent to receive all payments due hereunder and to execute division and transfer orders on behalf of said parties and their respective successors in title.

2.8    If the Grantor owns a less interest in the land described in Exhibit "A" than the entire and undivided fee simple surface estate therein, then the rentals and other payments or deliveries provided in Section 11 hereof shall be paid or delivered to the Grantor only in the proportion which the Grantor's interest in the surface bears to the whole and undivided surface fee.

2.9    The Grantor shall have the right to use gas, free of cost, for domestic appliances inside one dwelling house located on the land covered by this agreement, subject to and with the following specific understanding as regards said use:

(a)    The Grantor shall construct and maintain its own service line and regulator or regulators in such a manner as to prevent leakage of gas and shall use only appliances, regulators, and other equipment including pipe, designed and approved for the use of natural gas.

(b)    The tap or connection may be made to the field pipelines of the Grantee located on the land described in Exhibit "A" at a point to be approved by the Grantee; however, if none of the Grantee's field pipelines are located on said land, Grantor may have a connection on other field pipelines of the Grantee as provided above, provided, however, that the Grantor shall acquire and maintain his own easement and permit and show satisfactory proof of such right to the Grantee.

(c)    No connection shall be made to the Grantee's transmission pipelines.

(d)    The Grantee shall not be liable for any shortage or failure in the supply of gas for the Grantor's use. If the Grantee shall hereafter discontinue for any reason the use of the said Storage Reservoir or remove any of its field pipelines and equipment from said field to which Grantor has a service line connected, the Grantor's right to use gas as aforesaid shall terminate. Further, if the Grantee shall abandon, remove, or discontinue the use of any pipeline to which the Grantor may have a connection, the Grantee shall not be held responsible for the making of a new connection. The Grantor hereby specifically consents that the Grantee may at any time remove its pipeline or pipelines, and immediately thereupon the right to use gas, as set out in this paragraph 2.9, shall terminate, provided however, that should gas be available from another field pipeline located within the confines of the storage field, the Grantor shall have the right of connection as agreed above.

(e)    The Grantee shall not be liable in any way for damages or loss which may occur as a result of acts of the Grantor, which are caused by equipment or appliances of the Grantor, it being understood the Grantor's use of said gas shall be at its sole risk and expense.

2.10    Grantee shall bury its pipelines below plow depth.

2.11    No well shall be drilled nearer than two hundred feet (200') to any dwelling house or barn on the land described in Exhibit "A", without the written consent of the owner thereof.

2.12    The Grantor reserves the right to drill hereafter a well or wells through the Storage Reservoir; however, in connection with any such drilling the Grantor, his heirs, assigns, or lessees, shall notify the Grantee before the commencement of any such well, and all reasonable precautions, and ordinary care, shall be exercised, including the use of rotary drilling methods and the use of heavy mud, to protect the said Storage Reservoir from blowout or loss of gas during the drilling

-4-

of any such wells; and upon completion of such drilling, such well or wells shall be properly sealed, whether producing or not, by cementing to prevent loss of gas or reservoir fluids from or the encroachment of water into the Storage Reservoir, and the Storage Reservoir shall not be damaged during such drilling, or thereafter during any completion, production, or well stimulation operations, and the Grantor shall permit Grantee or its duly authorized employees or agents, but at its sole risk and expense, to have access to the derrick floor of all wells which penetrate said Storage Reservoir for the purpose of observing and inspecting drilling operations insofar as they relate to the safety of Grantee's operations concerning its rights in and to said Storage Reservoir.

2.13   To use, free of cost, water produced on the land described in Exhibit "A" for Grantee's operations of its Storage Reservoir, except water from ponds of Grantor or wells drilled by Grantor.

2.14   The Grantor hereby warrants and agrees to defend the title to the land described in Exhibit "A" and agrees that the Grantee shall have the right at any time to redeem for the Grantor, by payment, any mortgage, taxes, or other liens on said land, in the event of default of payment by the Grantor, and shall be subrogated to the rights of the holder thereof; and Grantor agrees that any such payments made by the Grantee for the Grantor shall be deducted from any amounts of money which may become due the Grantor under the terms of this agreement.

2.15   This agreement shall extend to and be binding upon the heirs, assigns, executors, administrators, and successors of both parties hereto, and either party may assign, transfer, and convey, either in whole or in part, its ownership or interest in the land, rights, privileges, and property covered by this agreement; but no change in ownership of the land described in Exhibit "A" shall be binding upon the Grantee until the instrument conveying title thereto shall have been properly recorded in the County Court Clerk's Office and a certified copy thereof shall have been furnished to the Grantee.

2.16   Any notices or requests herein requested or permitted shall be deemed sufficient as to delivery if given in writing, deposited in the United States mails, registered, return receipt requested, addressed to the other party hereto as follows:

Grantor:   Route 5, Box 176 Madisonville, KY 42431

Grantee:   Texas Gas Transmission Corporation, P. O. Box 1160
Owensboro, Kentucky 42301

2.17   All covenants whether expressed or implied by this agreement shall be subject to all federal and state laws and to all executive orders, rules or regulations of state and federal authorities. The rights created by this agreement shall not be terminated in whole or in part, nor Grantee held liable for any failure to perform hereunder, if such failure is due to or is a result of any such law, order, rule or regulation.

IN TESTIMONY WHEREOF, witness the signature of the Grantor, this the date first hereinabove written.

This instrument was prepared by
Jerry Blandford
3800 Frederica Street
Owensboro, Kentucky

x Robert D. Thill
x JoAnn Thill

(26)

159

STATE OF _Ky._
COUNTY OF _Hopkins_

I, _Gerald W Blandford_, a Notary Public in and for the state and county aforesaid, do hereby certify that this day there appeared before me, _Robert J. Hill and JoAnn Hill_ _____

who produced the foregoing instrument and duly signed and acknowledged the same to be _their_ act for the uses and purposes therein set forth.

WITNESS my hand and official seal, this _23rd_ day of _April_, 19_87_.

_____Gerald W Blandford_____
Notary Public

My Commission expires: _Aug. 1, 1988_.

STATE OF _____
COUNTY OF _____

I, _____, a Notary Public in and for the state and county aforesaid, do hereby certify that this day there appeared before me, _____

who produced the foregoing instrument and duly signed and acknowledged the same to be _____ act for the uses and purposes therein set forth.

WITNESS my hand and official seal, this _____ day of _____, 19____.

_____
Notary Public

My Commission expires: _____.

-6-



ATMOS GATHERING COMPANY, LLC.

BARNSLEY - EAST DIAMOND CONNECTOR PROPOSED ROUTING

ASSOCIATED ENGINEERS, INC.
2740 North Main St. Madisonville, KY 42431
Phone: (270) 821-7732  Fax: (270) 821-7789
www.associatedengineers.com

AEI JOB #: 08-0527B
DATE: 3/25/2009
SCALE: AS SHOWN
DRAWN BY: GWE
CHECKED BY:

Book 682 Page 390

Morgan Property
Railroad Tracks
East Diamond Connector "Line 2"
Hwy 41
Existing pipelines "LIne 1"
Morgan House
Ed Brackett Lane

D 211

EXHIBIT "A"

160

to

Mineral Conveyance and Storage Lease Agreement between

*Robert J. Hill and Jo Ann Hill*

"Grantor," and Texas Gas Transmission Corporation, "Grantee," dated *April 23, 1987*.

Land Description

All that tract or parcel of land located and situated in Hopkins County, Kentucky, and described as follows, to wit:

To Robert J. Hill and Jo Ann Hill, his wife, and the survivor of them, by Deed dated June 28, 1961, recorded in Deed Book 273, page 478, Hopkins County Court Clerk's Office, the surface only of a tract of land more particularly described as follows:

A certain tract of land in the Mortons Gap section of Hopkins County, Kentucky, beginning at the junction of the County Road known as Brackett's Lane and the L & N Railroad right of way at a fence post, which point is the Southwest corner of the land of which this tract is a part, and also the Southwest corner of the tract conveyed in this deed; running thence N 75° 39' E with Brackett Lane 290 feet to the Southwest corner of the tract of Claud Almon; running thence in a Northwesterly direction with the West line of Claud Almon 420 feet to the Northwest corner of the Claud Almon tract; running thence in a Southwesterly direction 290 feet to the L & N R.R. right of way; running thence with the L & N R.R. right of way S 30° 09' E, 420 feet to the point of beginning.

It is intended to include in the foregoing description all lands and interest therein contiguous to or appurtenant to the above-described lands owned or claimed by the Grantor, regardless of any omissions or irregularities in the foregoing description.